## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

Civil No. 10-CV-1843
The Honorable Judge Ann St. Eve

**G & G PEPPERS, LLC**
Appellant,

v.

**EBRO FOODS, INC.**
Appellee.

On Appeal from the United States Bankruptcy Court
for the Northern District of Illinois
Eastern Division

In re: EBRO FOODS, INC.
Chapter 11 Case No. 09-10101
Adversary No. 09-A-500
The Honorable Judge Eugene Wedoff

### APPELLEE'S RESPONSE BRIEF

Forrest L. Ingram #3129032
Michael V. Ohlman #6294512
Philip Groben #6299914
FORREST L. INGRAM P.C.
79 West Monroe, Suite 900
Chicago, Illinois 60603
(312) 759-2838

# TABLE OF CONTENTS

**SUMMARY OF ARGUMENT** ...........................................................................1

810 ILCS 5/2-207............................................................................................1

*Sethness-Greenleaf, Inc. v. Green River Corp.*, 65 F.3d 64 (7th Cir. 1995) .....................1

*Fabrica de Tejidos Imperial, S.A. v. GBrandon Apparel Group, Inc.*,
    218 F. Supp. 2d 974 (N.D. Ill. 2002)........................................................1

**PACA's History and Effect on this Matter**........................................................2

H.R. Rep. 98-543 (1983) ...............................................................................2

*In re Columbus Fruit Co.*, 40 Agric Dec. 109, 114 (1981) ......................................2

*Wayne Cusimano. Inc. v. Block*, 692 F.2d 1025, 1028 n.2 (C.A.5 1982)
    (quoting 1956 U.S. Code Cong. & Admin.. News 3699, 3701)...............................2

*Cooseman Specialties, Inc. v. Gargiuilo*, 485 F.3d 701, 705 (2d Cir. 2007) .......................2

*Rothenburg v. H. Rothstein & Sons*, 183 F.2d 524 (3rd Cir. 1950). ..............................2

*In re Joaquin Food Service, Inc.*, 958 F.2d 938, 939 (9th Cir. 1992)..............................2

*D.M. Rothman & Co. et. al. v. Korea Commercial Bank of New York*,
    411 F.3d 90, 94 (2d Cir. 2005) .................................................................3

*Coosemans Specialties, Inc. v. Gargiulo et. al.*, 485 F.3d 701, 705 (2d Cir. 2006) .................3

*Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A.*, 362 F.3d 33, 38 (2d Cir. 2004) .............3

*In re Delyser*, 295 B.R. 430, 436 (Bankr. Ct. W.D.N.Y. 2003) ...................................3

7 C.F.R. 26.26(e)(2) ...................................................................................3

7 U.S.C.S. § 499f (2009) ..............................................................................4

I.    **The Bankruptcy Court Properly Found That a Valid Express Contract Memorialized the Transactions Between Ebro and G&G** ............................. 4

*In re Richmond Produce*, 112 B.R. 364 (Bankr. N.D. Cal. 1990) …….. ……………….....….. 5

*Cloud Corp. v. Hasbro, Inc.* 314 F.3d 289, 295 (7th Cir. 2003……………......…………….. 5

*Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1284 (7th Cir. 1986)……….5

*U.S. Industries Inc. v. Semco Manuracturing, Inc.*, 562 F.2d 1061 (8th Cir. 1977)…………….. 5

7 U.S.C.S. § 4614 (2009 …………………………………………………………....….. 5

*McCreary County v. ACLU*, 545 U.S. 844, 862 (2005) ………………………………….... 6

*Country Best, et. al. v. Christopher Ranch et. al.* 361 F.3d 629, 631 (11th Cir. 2004 ………….. 6

*In re Delyser*, 295 B.R. 430, 432-33 (Bankr. W.D.N.Y. 2003) ……………………………… 6

*In re Ocean View Produce, Inc.*, PACA Docket No. D-08-0064 (U.S.D.A. Jan. 16, 2009) …..... 6

*Finer Foods Sales Co. v. Block*, 708 F.2d 774, 782 (D.C. Cir. 1988). ………………………… 6

7 C.F.R. § 46.46(f)(1) …………………………………………………………………… ..6

*In re Richmond Produce Co.*, 112 B.R. 364, 373 (Bankr. N.D. Cal. 1990) …………….....….. 6

*Patterson Frozen Foods v. Crown Foods Int'l*, 307 F.3d 666, 671 (7th Cir. 2002)…………..….. 7

*Bocchi Americas Assoc's, Inc. v. Commerce Fresh Mktg., Inc.*, 515 F.3d 383, 391
    (5th Cir. 2008) ………………………………………………………………….. 7

*Phillips Mushroom Farms, L.P. v. Gold Star Mushroom Company, Inc.*,
    2004 U.S. Dist. LEXIS 5489 (E.D. Penn. 2004 …………………………………….7

*Debruyn Produce Co. v. Richmond Produce Co.*, 112 B.R. 364, 375,
    (Bankr. Ct. N.D. CA 1990) …………………………………………………....…..7

810 ILCS 5/2-206 (2009) ………………………………………………………….8

    **II.**    **The Bankruptcy Court Properly Found that G&G's Failure to Comply With the
       Statutory Notice Requirements of 7 C.F.R. § 46.46(e)(1) Destroyed Its Trust
       Benefits** ………………………………………………………………………8

7 U.S.C.S. § 499e(c)(3) ………………………………………………………….. 9

*Nature Vine Ripe Tomatoes v. Rawls Brokerage, Inc.*, 536 F.Supp. 2d 1259
    (N.D. Ala. 2005) ………………………………………………………….9

7 U.S.C. § 499e(c)(3) ………………………………………………………….. 10

    III.    **Since No Valid PACA Trust Exists, G&G Is Not Entitled To Fees As a Prevailing Party** ……………………………………………………………...10

*Robinson Farms Co. v. D'Acquisto,* 962 F.2d 680, 681 (7th Cir. 1992) ……………………..... 11

*Fruit Belt Canning Co., Inc. v. Heinemann's Inc.,* 2006 WL 1430801, 1-2 (N.D. Ill. 2006) …. 11

*Strube Celery & Vegetable Co. v. Global Foods, LLC,* 2007 WL 5395648, 1-2 (S.D. Ind. 2007) …………………………………………………………………………….11

    IV.    **Objections to the Stipulations Were Wavied**…………………………………… 11

*United States v. Wynn,* 845 F.2d 1439, 1443 (7th Cir. 1988) ……………………………… 11

*Graegfenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1206 (7th Cir. 1988) ……………………… 12

*Morrison v. Genuine Parts Co.,* 828 F.2d 708, 709-10 (11th Cir. 1987) ……………………… 12

*Cates v. Morgan Portable Bldg. Corp.,* 780 F.2d 683, 690-91 ………………………………….. 13

## SUMMARY OF ARGUMENT

Both parties agree that the transaction between Ebro and G&G is governed by a contract; however, the parties disagree as to the statutory mechanism that governs the agreement.  G&G proffers that a Perishable Agricultural Commodities Act (hereinafter, referred to as "PACA") trust" was created because after delivering peppers pursuant to a purchase order, G&G sent Ebro an invoice that contained the words "PACA Terms."  The Bankruptcy Court disagreed with G&G's position and ruled in favor of Ebro.  The Bankruptcy Court held that the purchase orders were express agreements and G&G's failure to comply with PACA's strict eligibility and notice requirements divested G&G of any PACA trust benefits it may have had.  (opinion at 11)   The Court also properly found that the terms of the signed purchase order governed the transaction between G&G and Ebro and any further attempted modifications were unilateral in nature and were not made part of the agreement.[1]  The damages stemming from Ebro's breach of the contracts is classified as a general unsecured claim in Ebro's bankruptcy proceeding.

The dispute over whether there is a PACA trust claim is significant because if G&G is successful then the damages stemming from Ebro's breach would be subject to a "floating trust" outside of the bankruptcy estate.  Rather than being a general unsecured creditor, G&G's claim would consist of assets outside of the bankruptcy estate and it could collect any and all funds immediately.

---

[1] While G&G does not argue that they have a claim for fees pursuant to after-received invoices, it bears mentioning that when G&G included an attorneys' fees provisions in its invoices it sent to Ebro *after* the transaction completed that those non-conforming, unilateral modifications are barred by 810 ILCS 5/2-207. *See Sethness-Greenleaf, Inc. v. Green River Corp.*, 65 F.3d 64 (7th Cir. 1995) and *Fabrica de Tejidos Imperial, S.A. v. GBrandon Apparel Group, Inc.*, 218 F. Supp. 2d 974 (N.D. Ill. 2002)

## PACA's History and Effect on this Matter

The rationale behind the statute is rooted in the Great Depression and its aftermath. At that time, individual farmers had very little bargaining power and larger producers could impose uncompetitive terms on them. The statute is also intended to remedy the "domino effect" caused by the failure to pay for fresh produce. H.R. Rep. 98-543 (1983) When a party fails to pay for produce it does not merely adversely affect the party who is not paid for the produce, but such violations have a tendency to snowball. "On occasions, one licensee fails to pay another licensee who is then unable to pay a third licensee. This could have serious repercussions to procurers, licensees and consumers." *In re Columbus Fruit Co.*, 40 Agric Dec. 109, 114 (1981), aff'd. mem., 41 Agric. Dec. 89 (D.C. Cir. No. 81-1446, January 19, 1982). "PACA is an intentionally rigorous law whose primary purpose is to exercise control over an industry which is highly competitive, and in which the opportunities for sharp practices, irresponsible conduct and unfair methods are numerous." *Wayne Cusimano. Inc. v. Block*, 692 F.2d 1025, 1028 n.2 (C.A.5 1982) (quoting 1956 U.S. Code Cong. & Admin.. News 3699, 3701). Congress has amended the statute since the original version in the 1920s but its purpose continues – to protect small producers from the "abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." *Cooseman Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705 (2d Cir. 2007)(internal citations omitted), *Rothenburg v. H. Rothstein & Sons*, 183 F.2d 524 (3rd Cir. 1950).

PACA protects licensed sellers by establishing nonsegregated trusts in the seller's favor. Upon delivery of the conforming produce, a trust automatically arises in favor of the seller and continues until full payment is made. *In re Joaquin Food Service, Inc.*, 958 F.2d 938, 939 (9th Cir. 1992). One major difference between a PACA trust and other types of trusts is that the *res*

2

of a PACA trust includes all assets of the buyer. *D.M. Rothman & Co. et. al. v. Korea Commercial Bank of New York*, 411 F.3d 90, 94 (2d Cir. 2005); *Coosemans Specialties, Inc. v. Gargiulo et. al.*, 485 F.3d 701, 705 (2d Cir. 2006).   Rather than tracing the profits, courts are to assume that the buyer comingled the produce with all of its other assets. *Id.*  This renders all assets of the buyer subject to attachment and liquidation for the benefit of the seller. *Id..*   This trust claim even "trump[s] the buyers' other creditors, including secured ones." *Id.* (quoting *Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A.*, 362 F.3d 33, 38 (2d Cir. 2004)).

   To temper the all-encompassing nature and draconian consequences of the PACA trust provisions, Congress demands that the seller provide notice of its intention to preserve these extraordinary trust rights. *In re Joaquin Food Service, Inc.*, 958 F.2d at 939.   For example, an unpaid seller will lose the benefit of the trust "when the parties expressly agree to a payment time period different from that established by the Secretary" and the seller does not include the terms of payment "on invoices, accountings, and other documents relating to the transaction." 7 U.S.C. § 499e(c)(3).   If a seller "fails to include the previously agreed to payment terms on the very invoice that it elects to use to give notice of its intent to preserve the PACA Trust, it loses the benefits of the Trust." *Id.*; *In re Delyser*, 295 B.R. 430, 436 (Bankr. Ct. W.D.N.Y. 2003); *Patterson Frozen Foods, Inc.* 307 F.3d at 671.   Since the genesis and continuation of PACA is to protect farmers and producers from "slow-pay and no-pay" buyers, Congress demands that each transaction that modifies the default Net 10-day payment terms be memorialized on the invoices and other documents.[2]

   G&G and Ebro agreed to Net 30-day payment terms pursuant to duly signed purchase orders. (*See* Ebro's Trial Ex. 1, 3, 4).  These express agreements memorialized all the necessary details

---

[2] Timely notice and expedited payment terms are so important that no PACA trust may be enforced if the parties agree to terms that are greater than 30-days.  7 C.F.R. 26.26(e)(2)

3

of the transactions and the agreements were signed by G&G and returned to Ebro before the transaction commenced. *See Id.* G&G then performed in strict compliance with the terms in each of the purchase orders. Upon Ebro's acceptance of the conforming goods, G&G received a PACA trust subject to the extended payment terms contained in the purchase order. To perfect the trust G&G was required to include the Net 30-day payment terms on all subsequent payment documents. G&G's invoices failed to include the Net 30 payment terms. (*See* Ebro Trial Ex. 8, 9, and 10). The failure of G&G to place the crucial payment terms that are required by statute destroyed any PACA trust benefits G&G would have otherwise be entitled to. Since G&G is not entitled to the benefits of a PACA trust, G&G may not recover attorneys' fees and costs and in fact, Ebro may now collect attorney's fees in defending this appeal. 7 U.S.C.S. § 499f (2009).

I.    **The Bankruptcy Court Properly Found That a Valid Express Contract Memorialized the Transactions Between Ebro and G&G**

G&G claims that a purchase order signed by its representative and performed according to the terms set forth therein is not a contract and/or it is not an "express agreement prior to the affected transactions as required under PACA." *G&G's brief page Docket No. 13-1 page 8.* Instead, G&G asserts, without citation, that a purchase order is only a "confirmatory memoranda used to formalize an oral agreement" and that the Bankruptcy Court should not have applied Illinois law in concluding that purchase orders were contracts.[3] *See* Docket No. 13-1, page 8-9. This argument is incorrect at law and in substance. PACA does not abrogate contract law and does not impose any restrictions on contract formation. If anything, PACA relaxes the formal

---

[3] G&G's argument that Illinois commercial law does not apply is nonsensical and should be disposed of in short order. G&G does not support its contention with any case law or statutory provision and PACA claims are reviewed with an eye towards their purpose, the sale of goods. Nothing in PACA abrogates or supplants the principals of contract law and contract construction and the courts in the various PACA cases Ebro cites throughout this brief rely heavily on the Uniform Commercial Code.

4

requirements to protect unsophisticated sellers of produce.   *See In re Richmond Produce*, 112 B.R. 364 (Bankr. N.D. Cal. 1990).

The Seventh Circuit has held that signed acknowledgements of purchase orders sent from a buyer to a seller constitutes an express agreement pursuant to 810 ILCS 5/2-201. *Cloud Corp. v. Hasbro, Inc.* 314 F.3d 289, 295 (7th Cir. 2003) ("The governing law is Illinois' adoption of the Uniform Commercial Code"); *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1284 (7th Cir. 1986). This holding is not unique. Other Circuits consistently hold that a signed purchase order is an acknowledgement of an express agreement as long as it satisfies the statute of frauds. *U.S. Industries Inc. v. Semco Manuracturing, Inc.*, 562 F.2d 1061, 1067 fn. 8 (8th Cir. 1977); *Detroit Radiant Prods. Co. v. BSH Home Appliances Corp.*, 473 F.3d 623 (6th Cir. 2007).

Likewise, purchase orders qualify as written agreements entered into before the transaction for the purposes of PACA. The PACA clearly states:

**ACCOUNTS AND RECORDS (GENERAL)**

> Every commission merchant, dealer, and broker shall prepare and preserve for a period of two years from the closing date of the transaction the accounts, records, and memoranda required by the Act ... it is impracticable to specify in detail every class of records which may be found essential since many different types of business are conducted in the produce industry and many different types of contracts are made covering a wide range of services ... the responsibility is placed on every licensee to maintain records which will disclose all essential facts regarding the transactions in his business.

7 U.S.C.S. § 4614 (2009)

The difference in the terms "transactions" and "contracts" contained in the statute clearly indicates that Congress intended for the term "contract" to specifically refer to the documents and the time frame before delivery of the produce while "transactions" encompass the actual act

of performance. *See McCreary County v. ACLU*, 545 U.S. 844, 862 (2005)(one should interpret statutes in light of its "text, structure, purpose and history"); *Country Best, et. al. v. Christopher Ranch et. al.* 361 F.3d 629, 631 (11th Cir. 2004)( "we presume that Congress said what it meant and meant what is said…" (internal citations omitted). Further, purchase orders qualify as pre-transaction documents under PACA because the parties entered into these contracts *before* the delivery of the goods – hence, before the "transaction" took place. *See In re Delyser*, 295 B.R. 430, 432-33 (Bankr. W.D.N.Y. 2003), *In re Ocean View Produce, Inc.*, PACA Docket No. D-08-0064 (U.S.D.A. Jan. 16, 2009) (The U.S.D.A. found that payment terms that modify the default terms must be contained in an independent document that was entered into before the delivery.)

Congress did not intend for PACA to abrogate long-held contract principals; instead it provides the sellers of perishable goods additional remedies if a buyer breaches a valid contract. *See* Docket No 13-1 page 12. "PACA is a remedial statute designed to ensure that commerce in agricultural commodities is conducted in an atmosphere of financial responsibility." *Finer Foods Sales Co. v. Block*, 708 F.2d 774, 782 (D.C. Cir. 1988). It specifically allows for more lenient formalities in construing contracts because "many different types of business are conducted in the produce industry and many different types of contracts are made." 7 C.F.R. § 46.14 (2010) "Nothing in either PACA itself or the policies that lie behind it justifies the judicial creation of a rule that can be satisfied only by a formally executed document with the word CONTRACT typed at the top." *Patterson Frozen Foods*, 307 F.3d at 671. The *Patterson* Court and others have found that a PACA trust may be created through letters, purchase orders, or any other document that reduces the parties' intentions to writing without a need for formality. *Id.* citing, 7 C.F.R. § 46.46(f)(1); *In re Richmond Produce Co.*, 112 B.R. 364, 373 (Bankr. N.D. Cal. 1990). This way neither the unsophisticated buyer nor seller is at a disadvantage.

6

The lack of contractual formalities running throughout PACA has led many Circuits to find that a PACA contract may be created so long as the document conforms to the statute of frauds. These findings are not cited or supported by G&G.  Rather, the Appellant contends that the Bankruptcy Court erred when it concluded that Ebro's executed purchase orders were contracts after applying Illinois' version of the statute of frauds. G&G fails to appreciate the Seventh's Circuit's holding in *Patterson Frozen Foods v. Crown Foods, Int'l.*

In *Patterson* the Court held that courts <u>must</u> apply the statute of frauds to determine whether parties enter into a PACA transaction or modify a PACA trust.  *Patterson Frozen Foods v. Crown Foods Int'l*, 307 F.3d 666, 671 (7th Cir. 2002); *accord Bocchi Americas Assoc's, Inc. v. Commerce Fresh Mktg., Inc.*, 515 F.3d 383, 391 (5th Cir. 2008); *Phillips Mushroom Farms, L.P. v. Gold Star Mushroom Company, Inc.*, 2004 U.S. Dist. LEXIS 5489 (E.D. Penn. 2004).   This standard is appropriate because "a PACA trust can be created by letters, invoices and other informal writings" there is "no reason why modification of the trust should require more than its creation".   *Id.*   The Northern District of California Bankruptcy Court looked to the text of the statute and came to the same result as the Seventh Circuit.

> 7 CFR Sections 46.2(aa)(11) and 46.46(f)(1), leads the court to conclude that the purpose of the writing requirement is to preclude uncertainties as to the applicable payment terms and the resulting deadline for filing a PACA notice. Thus, the provision at issue is in the nature of a statute of frauds and serves the same purpose.

*Debruyn Produce Co. v. Richmond Produce Co.*, 112 B.R. 364, 375, (Bankr. Ct. N.D. CA 1990). The cases make it clear, PACA claims look to the statute of frauds to determine the validity of the contract.  All that is required to satisfy the statute of frauds is a written document that adequately describes the essential terms of an agreement and contains the quantity term.  810 ILCS 5/2-201 (2009); *Cloud Corp. v. Hasbro, Inc.* 314 F.3d 289, 295 (7th Cir. 2003).

7

It is uncontroverted that between September 26 and October 4, 2007 Ebro sent three purchase orders to G&G for the purchase of jalapeno peppers. (*See* Ebro's Trial Ex. 1, 3, 4). Each of the purchase order specified: 1) the quantity of peppers desired; 2) the price per pound of conforming goods; 3) the method and protocol for delivery; and 4) the payment terms. *Id.* All of the necessary and required terms for the formation of a contract were included in the fax transmissions. *See* 810 ILCS 5/2-206 (2009). The purchase orders also requested that G&G "sign and return via fax to ensure that [the] order was received and processed." (*See* Ebro Ex. 1, 3, & 4). This contract is the basis for the extended payment terms. Upon the receipt of each of the three purchase orders, an authorized representative from G&G signed the purchase order and faxed it back to Ebro. *See* _____. Between October 2 and 10, 2007, Ebro received the requested shipments of peppers from G&G in strict compliance with the terms found in the purchase order.

G&G accepted the terms of the purchase order and performed by sending conforming goods to Ebro. These actions clearly show that the parties intended on entering into a contract for the sale of goods. In addition, each of the invoices was completed before the G&G shipped the peppers. G&G failed to point to any cases or statutes that supplant the cases cited by the Bankruptcy Court and Ebro. Since the purchase orders constitute a written agreement entered into prior to the transaction, if follows that the Bankruptcy Court did not err.

II. **The Bankruptcy Court Properly Found that G&G's Failure to Comply With the Statutory Notice Requirements of 7 C.F.R. § 46.46(e)(1) Destroyed Its Trust Benefits**

The purchase orders between Ebro and G&G clearly satisfy the statute of frauds and extended the payment terms of a PACA transaction from the default Net 10-days to Net 30-days.

8

Because there was a written agreement between Ebro and G&G extending the payment terms, G&G was statutorily required to disclose those new payment terms on the "invoices, accountings and other documents relating to the transaction." 7 U.S.C.S. § 499e(c)(3).   G&G failed to include those terms thereby "losing any benefits created by the Trust" *In re Delyser*, 295 B.R. at 436.

The law is clear – if "a seller fails to include the payment terms previously agreed to by the parties in writing on the very invoice that it elects to use to give notice of its intent to preserve the PACA Trust, it loses the benefits of the Trust." *Delyser*, 295 B.R. at 436.   Due to the extraordinary protections, PACA imposes strict requirements on produce sellers that seek to benefit from its protections. *Bocchi*, 515 F.3d at 389.   These requirements go so far as to render "stock language" ineffective. *Nature Vine Ripe Tomatoes v. Rawls Brokerage, Inc.*, 536 F.Supp. 2d 1259 (N.D. Ala. 2005).

For example, in *Nature Vine Ripe Tomatoes* a third-party intervening seller, Seald-Sweet, LLC brought an action against a buyer to collect pursuant to a PACA trust.   536 F.Supp. 2d 1259 (N.D. Ala. 2005).   It was stipulated that the buyer and Seald-Sweet, LLC entered into Net 30-day payment terms for the sale of produce pursuant to a written agreement.   When Seald-Sweet, LLC sent its invoice to the buyer it contained the exact phrase, "PACA terms" rather than Net 30-days required by 7 U.S.C.S. § 499e(c)(3).   *Id.* at 1268   The Court denied Seald-Sweet, LLC PACA claims stating,

> Seald-Sweet failed to disclose the 30-day extended payment term on any of the documents related to the transactions for which Seald-Sweet seeks trust benefits. Instead, Seald-Sweet's invoices stated "PACA Terms"...because it failed to [disclose the extended terms] the court finds that Seald-Sweet failed to maintain its eligibility for trust benefits and failed to properly preserve its trust benefits.

*Id.*

9

This matter mirrors the matter at bar. Ebro and G&G entered into the sale of produce pursuant to a written agreement. After G&G delivered the goods it delivered invoices to Ebro demanding payment. "The invoices were forms including both a completed box stating that the payment terms were 'PACA "terms"' and a preprinted statement that G&G had a statutory trust claim under Section 5(c) of PACA." (*opinion* at 4). G&G did not include any reference to the new Net-30 credit terms and therefore; they could not retain their PACA trust.

Since the purchase orders were signed by G&G and constitute "written transactions" for purposes of 7 U.S.C. § 499e(c)(3), the statute demands that G&G disclose the new payment terms on all "invoices, accountings, and other documents related to the transaction." G&G failed to comply with the mandatory provisions and so it did not preserve its PACA trust benefits. As such, the Bankruptcy Court did not err in ruling against G&G on its PACA trust claim.

III.    Since No Valid PACA Trust Exists, G&G Is Not Entitled To Fees As a Prevailing Party

G&G failed to preserve its PACA trust rights and as such does not have a right to obtain attorney's fees from Ebro. In fact, Ebro asserts that it is the prevailing party because it stipulated that it breached the contracts with G&G so G&G did not win any significant issues relating to its claim.

Instead, Ebro now asserts that as a prevailing party, it should be entitled to its own attorneys fees incurred in connection with defending this appeal.[4] The 7th Circuit, Northern District of Illinois, and other jurisdictions have made clear that the recovery of attorney's fees is *mandatory* for a prevailing party involved a PACA lawsuit. See *Robinson Farms Co. v. D'Acquisto,* 962

---

[4] Ebro does not make any claim for attorneys' fees from the underlying Adversary, only the defense of this appeal.

10

F.2d 680, 681 (7th Cir. 1992) (holding that PACA makes an award of costs and attorney's fees to a prevailing party mandatory); See also *Fruit Belt Canning Co., Inc. v. Heinemann's Inc.*, 2006 WL 1430801, 1-2 (N.D. Ill. 2006) (noting that the entitlement to attorneys' fees need not be addressed at length since both parties agreed that attorneys' fees were warranted under PACA, and moving directly to a determination of the reasonableness of the amount sought); See also *Strube Celery & Vegetable Co. v. Global Foods, LLC*, 2007 WL 5395648, 1-2 (S.D. Ind. 2007) (granting the prevailing parties' judgment, along with attorney's fees). Ebro expects to be the "prevailing party" for purposes of awarding mandatory attorney's fees in this appeal and as a result Ebro is entitled to a mandatory award of its attorney's fees stemming from G&G's adversary complaint alleging a PACA trust.

## IV.   Objections to the Stipulations Were Wavied.

G&G is asserting that pre-trial stipulations are binding on the parties unless a finding is made by the Court which relieves that burden. However, in order for a Court to make such a finding the party seeking its exclusion must make a timely objection. If evidence is offered and a party waives its right to object, that right to object is abandoned. *See United States v. Wynn*, 845 F.2d 1439, 1443 (7th Cir. 1988)(an objection is waived if for a strategic reason). The record does not contain objections to any of Ebro's defenses or modified stipulations. At the hearing on October 7, 2009, Ebro modified some if its pre-trial stipulations and admitted that it breached the contracts at issue. G&G did not object to the change in Ebro's position because it helped G&G. Ebro's "new" position then asserted defenses of the PACA trust but again, G&G did not object. The only exchange G&G had with the court regarding the "new defenses" was as follows:

MR. STOKES:   They are – we are hearing for the first time today an issue that wasn't raised in the pre-trial order that a variance between the purchase order and the invoice is being raised as a defense. The court, of course, can allow whatever defense to be raised. We would prefer – we didn't show unprepared to argue that today.

THE COURT:   I'm not inclined to make you present your argument orally today.

MR. STOKES:   That's fine.

THE COURT:   I would prefer to have simultaneous briefs submitted in a couple of weeks, and then simultaneous reply briefs a week or two after that, and then I'll be able to rule.

MR. STOKES:   That will be fine, Your Honor.

Transcript of Proceedings, October 7, 2009 (Pg. 15-16)

G&G's brief addressed did not object to the "new defenses" either. In ¶ 5 G&G's brief stated,

> Debtor Ebro Foods, Inc. ("EBRO") asserted, as its sole legal defense, that G&G had waived its PACA trust rights because there is a discrepancy between payment terms in the purchase orders, 30 days, and the PACA payment term contained in the invoices for the shipments giving rise to G&G's claim.

09-00500 Doc. 36

Clearly, G&G did not object to the Bankruptcy Judge accepting a variation between Ebro's pre-trial stipulations and the defenses asserted in court and in the trial briefs.

In the event the court finds G&G did preserve its objection based on his surprise and acquiescence, the Bankruptcy Court did not err in granting Ebro relief from the stipulation. Even the case cited by G&G supports the proposition that granting relief from a pretrial stipulation is permissible. *Graegfenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (7th Cir. 1988). The *Graefenhain* Court found that trial courts are given broad discretion in handling matters of trial management. Only when the abuse is clear and unmistakable will a trial court's order be overturned. *Id.* at 1206; See *Morrison v. Genuine Parts Co.*, 828 F.2d 708, 709-10 (11th Cir. 1987)(Courts have broad discretion in holding parties to their stipulations); *Cates v. Morgan*

12

*Portable Bldg. Corp.*, 780 F.2d 683, 690-91 (7th Cir. 1985)(granting relief from a stipulation is a permissible exercise of the court's discretion); Fed. R. Civ. Pro. 16.

G&G did not object to Ebro's allegedly "new defenses" while in court and did not do so when given an opportunity to do so in writing. Due to this acquiescence and the Bankruptcy Court's inherent power to grant relief from pre-trial stipulations, it is clear that the Bankruptcy Court properly allowed Ebro to admit that it breached the contracts with G&G.

## CONCLUSION

G&G is attempting to invalidate the purchase orders that they signed and performed pursuant to solely for the Net-30 terms. G&G does not argue that it signed the purchase order; G&G does not argue that it delivered peppers in the amount requested in the purchase order; G&G does not argue the price per pound was incorrect and in fact G&G seeks to be compensated based on the terms outlined in the purchase order. Instead G&G is seeking to invalidate the agreement it signed because it failed to preserve its PACA trust claims. G&G's transparent argument was properly rejected by the Bankruptcy Court and should be rejected by this Court as well.

**WHEREFORE,** in addition to the relief sought in this brief, Ebro Foods, LLC., respectfully requests that this Honorable Court deny all the relief sought by G&G Peppers, LLC, and grant Ebro Foods, LLC. the right to file a petition for fees and costs in this appeal and to conduct an appropriate hearing on its counsel's petition for fees stemming from the defense of G&G's appeal. Ebro Foods, LLC also prays for such further relief as this Court deems just and appropriate.

13

Respectfully Submitted,
EBRO FOODS, INC.

___/s/ Michael V. Ohlman____
One of its attorneys

Forrest L. Ingram #3129032
Michael V. Ohlman #6294512
Philip Groben #6299914
FORREST L. INGRAM P.C.
79 West Monroe, Suite 900
Chicago, Illinois 60603
(312) 759-2838

14