UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re EBRO FOODS, INC., <br><br> Debtor. <br> _____ <br><br> G&G PEPPERS, LLC, <br><br> Plaintiff-Appellant, <br><br> vs. <br><br> EBRO FOODS, INC., <br><br> Defendant-Appellee. | 10 C 1843 <br><br> Judge Feinerman |

## **OPINION**

Plaintiff-Appellant G&G Peppers, LLC timely appealed to this court the bankruptcy court's decision in *In re Ebro Foods, Inc.*, 424 B.R. 420 (Bankr. N.D. Ill. 2010). This court has jurisdiction under 28 U.S.C. § 158(a), and reviews the bankruptcy court's factual findings for clear error and conclusions of law *de novo*. *See In re Midway Airlines, Inc.*, 383 F.3d 663, 668 (7th Cir. 2004); *In re Smith*, 286 F.3d 461, 465 (7th Cir. 2002). For the reasons that follow, the court affirms the bankruptcy court's ruling that G&G failed to preserve its statutory trust rights under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a *et seq*., which would have granted G&G priority over the other creditors, including secured creditors, of Debtor/Defendant-Appellee Ebro Foods, Inc. *See* 7 U.S.C. § 499e(c)(2). The court reverses the bankruptcy court's denial of G&G's request for attorney fees, and remands for determination of a reasonable fee award.

## Background

At all relevant times, Ebro was a food manufacturer and licensed PACA dealer, and G&G was one of Ebro's suppliers. Between September 26 and October 4, 2007, Ebro sent G&G three purchase orders for jalapeño peppers. Each purchase order indicated the quantity of peppers ordered, the price per pound, a delivery date, and payment terms of "Net 30 Days," and each requested that, "[t]o ensure this order was received and processed, please sign and return via fax." A G&G representative signed the purchase orders and returned them to Ebro. G&G then shipped the peppers, which arrived between October 2 and October 10, 2007.

On or about the date of each shipment, G&G faxed an invoice to Ebro requesting payment. The invoices stated that the payment terms were "PACA 'terms,'" and set forth language intended to preserve G&G's PACA trust rights:

> The perishable agricultural commodities listed on this invoice are sold subject to statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

Ebro did not pay a penny of the $42,920 purchase price of the peppers. On February 27, 2008, pursuant to 7 U.S.C. §§ 499f & 499g(a), G&G filed a complaint with the United States Department of Agriculture ("USDA") seeking reparations for Ebro's non-payment. The USDA entered a reparations order on August 8, 2008, awarding G&G $42,920 for the unpaid peppers, $300 in costs, and annual interest of 2.3 percent from November 1, 2007, until the date of payment.

Pursuant to 7 U.S.C. § 499g(b), G&G filed suit in federal district court to enforce the reparations order. *G&G Peppers, LLC v. Ebro Foods, Inc.*, No. 09 C 489 (N.D. Ill.). That case

was stayed when Ebro filed the underlying bankruptcy proceeding in March 2009. On June 19, 2009, G&G commenced an adversary proceeding to enforce the reparations order, to recover its attorney fees, and to obtain a PACA trust and turnover of assets to satisfy its claim. After a trial on stipulated facts, the bankruptcy court held that Ebro owed G&G $43,946.60 ($42,920 for the peppers plus 2.3 percent interest and $300 in costs), but that G&G had failed to preserve its PACA trust rights and thus was not entitled to priority over Ebro's other creditors. 424 B.R. at 426-31. The bankruptcy court also held that G&G was not entitled any attorney fee award under Illinois law. *Id*. at 424-26.

## Discussion

G&G challenges the bankruptcy court's denial of its PACA trust claim and its request for attorney fees. The challenges are considered in turn.

**I.    G&G Failed To Preserve Its PACA Trust Rights.**

Congress enacted PACA in 1930 to promote fair trading practices in the produce industry and to protect small farmers and growers vulnerable to the sharp practices of financially irresponsible buyers. *See Consumers Produce Co., Inc. v. Volante Wholesale Produce, Inc.*, 16 F.3d 1374, 1377 (3d Cir. 1994); *Hull Co. v. Hauser's Foods, Inc.*, 924 F.2d 777, 780 (8th Cir. 1991). Congress amended PACA in 1984 to provide that perishable agricultural commodities received by a licensed dealer, products derived from those commodities, and proceeds from their sale shall be held in a floating trust for the benefit of unpaid suppliers until full payment has been made. *See* 7 U.S.C. § 499e(c)(1)-(2); *Nickey Gregory Co. v. AgriCap, LLC*, 597 F.3d 591, 594-95 (4th Cir. 2010); Scott T. Rodgers, *Potatoes and Wild Blueberries: Perfection and Enforcement Under the Perishable Agricultural Commodities Act*, 12 Me. B.J. 302 (1997). The statutory trust provision grants unpaid suppliers a priority position over all other creditors,

including secured creditors.  *See Nickey Gregory*, 597 F.3d at 594-95; *Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666 (7th Cir. 2002).

PACA trust rights are automatically granted when perishable commodities are bought on credit, but can be lost if not preserved by the seller.  *See D.M. Rothman & Co., Inc. v. Korea Commercial Bank of N.Y.*, 411 F.3d 90, 96 (2d Cir. 2005).  To preserve its PACA trust, a seller must satisfy the statute's strict eligibility requirements.  *See Patterson Frozen Foods*, 307 F.3d at 669; *Greg Orchards & Produce, Inc. v. Roncone*, 180 F.3d 888, 890-91 (7th Cir. 1999).  The statute sets forth two methods of preserving the trust.  The first provides:

> The unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days (i) after expiration of the time prescribed by which payment must be made, as set forth in regulations issued by the Secretary, (ii) after expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction, or (iii) after the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored.  The written notice to the commission merchant, dealer, or broker shall set forth information in sufficient detail to identify the transaction subject to the trust.  When the parties expressly agree to a payment time period different from that established by the Secretary, a copy of any such agreement shall be filed in the records of each party to the transaction and the terms of payment shall be disclosed on invoices, accountings, and other documents relating to the transaction.

7 U.S.C. § 499e(c)(3).  The second method provides:

> In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and

> any receivables or proceeds from the sale of these commodities until full payment is received."

7 U.S.C. § 499e(c)(4); *see Idahoan Fresh v. Advantage Produce, Inc.*, 157 F.3d 197, 199-200, 206 (3d Cir. 1998). The maximum payment period to which the parties may agree without abrogating a PACA trust is "30 days after receipt and acceptance of the commodities." 7 C.F.R. § 46.46(e)(2); *see In re The Caito Produce Co.*, 48 Agric. Dec. 602, 607-09 (1989).

G&G's invoices include the language quoted at the end of subsection (c)(4), thus reflecting its intent to invoke the second method of preserving its PACA trust rights. To successfully invoke this method, G&G was required to include on its invoices not only the language from subsection (c)(4), but also "the information required by the last sentence of paragraph (3)." The last sentence of subsection (c)(3) states that "[w]hen the parties expressly agree to a payment time period different from that established by the Secretary [of Agriculture], … the terms of payment shall be disclosed on invoices, accountings, and other documents related to the transaction." 7 U.S.C. § 499e(c)(3). The default "time period … established by the Secretary," known in the trade as "PACA terms," is ten days after the buyer accepts the produce. *See* 7 C.F.R. § 46.2(aa)(5).

The three purchase orders sent by Ebro and signed and returned by G&G provide for a "Net 30 Days" payment term, which is different than the ten-day term established by the Secretary. So, to comply with the last sentence of subsection (c)(3), the invoices sent by G&G had to disclose a thirty-day payment term. The invoices do no such thing; instead, they state "PACA terms," meaning ten days. Because the thirty-day term agreed to by the parties is not disclosed on G&G's invoices, G&G failed to comply with subsection (c)(4), and thus did not preserve its PACA trust rights. *See Nature Quality Vine Ripe Tomatoes v. Rawls Brokerage,*

*Inc.*, 536 F. Supp. 2d 1259, 1268 (N.D. Ala. 2005) (PACA trust rights lost where parties agreed to thirty-day payment term but seller's invoices stated "PACA Terms"); *In re Delyser*, 295 B.R. 430, 434-35 (Bankr. W.D.N.Y. 2003) ("[W]hen a seller elects to use the invoice notice option provided for by Section 499e(c)(4) in order to notify the buyer of its intent to preserve the PACA Trust, that seller must fully comply with the provisions of that paragraph in order to preserve the benefits of the Trust. Should a seller fail to include the payment terms previously agreed to by the parties in writing on the very invoice that it elects to use to give notice of its intent to preserve the PACA Trust, it loses the benefits of the Trust.").

G&G offers several arguments in an effort to avoid this conclusion, but each fails to persuade.

First, G&G contends that the bankruptcy court should not have entertained Ebro's argument that its purchase orders were express agreements because, in the parties' joint pretrial statement, Ebro maintained that the parties had no contract for the sale and shipment of peppers. A party's pretrial stipulation is binding "unless relief from the stipulation is necessary to prevent a 'manifest injustice' or the stipulation was entered into through inadvertence or based on an erroneous view of the facts or law." *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (7th Cir. 1989) (citation omitted). "As with other matters of trial management, the [trial] court has 'broad discretion' to decide whether to hold a party to its stipulations; the [trial] court's decision will be overturned on appeal only where the court has clearly and unmistakably abused its discretion." *Ibid*. (citation omitted).

The bankruptcy court here did not "clearly and unmistakably abuse its discretion" in permitting Ebro to deviate from its pretrial stipulation. As an initial matter, it is plain—and G&G does not argue otherwise—that the parties in fact contracted for the sale and shipment of

peppers. The bankruptcy court acted well within its discretion in allowing Ebro to defend against G&G's PACA trust claim on a theory (the discrepancy between the ten-day payment term on the invoices and the thirty-day payment term on the purchase orders) aligned with the plain facts of the case. Moreover, when Ebro informed the bankruptcy court that it intended to argue that the purchase orders were express agreements, G&G responded in open court that "[t]he court, of course, can allow whatever defense to be raised," and simply requested that it be permitted to brief the defense rather than argue it on the spot. The bankruptcy court allowed briefing, and G&G's brief did not contend that Ebro's pretrial stipulation foreclosed it from asserting that the purchase orders were express agreements under PACA. Accordingly, G&G waived any objection it might have had to Ebro pressing a defense based on the parties' express agreement to a thirty-day payment term.

Second, G&G contends on the merits that it and Ebro did not "expressly agree to a payment time period different from that established by the Secretary" because, according to G&G, the purchase orders do not qualify as express agreements under PACA. If G&G were right that the parties did not expressly agree to a thirty-day payment term, G&G was not required to reflect that thirty-day payment term on its invoices. But G&G is wrong. In *Patterson Frozen Foods*, the Seventh Circuit held that to qualify as an express agreement under PACA, a writing need not be "a formally executed document with the word 'CONTRACT' typed at the top," but need only satisfy "the generally applicable Statute of Frauds." 307 F.3d at 671. Because Ebro's purchase orders were signed by both parties and set forth all material terms—quantity, price, delivery date, and a thirty-day payment term—they plainly satisfy the statute of frauds and thus qualify as an express agreement under PACA. *See ibid*. ("a PACA trust can be created through letters, invoices, or anything else reduced to writing with no requirement of formality," and there

is "no reason why modification of the trust should require more than its creation"); *In re Bartlett*, 367 B.R. 21, 31-32 (Bankr. D. Mass. 2007); *In re Richmond Produce Co., Inc.*, 112 B.R. 364, 373 (Bankr. N.D. Cal. 1990), *overruled on other grounds*, *Middle Mountain Land & Produce Inc. v. Sound Commodities Inc.*, 307 F.3d 1220 (9th Cir. 2002); *see generally Architectural Metal Sys., Inc. v. Consol. Sys., Inc.*, 58 F.3d 1227, 1230-31 (7th Cir. 1995) ("Between the price quotations and the purchase order … there was enough indication of the terms of the parties' contract to satisfy the UCC's not very demanding statute of frauds.").

Third, G&G contends that even if there were an express agreement to a thirty-day payment term, that agreement was not entered into *before* the relevant transactions, which means that G&G did not have to reflect that term in its invoices. In so contending, G&G invokes a Department of Agriculture regulation providing that to preserve a PACA trust under subsection (c)(4), the seller's invoice must contain "[t]he terms of payment if they differ from [PACA terms]" if "the parties have expressly agreed to such terms in writing *before the affected transactions occur*." 7 C.F.R. § 46.46(f)(3)(ii) (emphasis added). G&G submits that the agreement to a thirty-day payment term in the purchase orders was entered contemporaneously with "the affected transactions," not before the transactions, because the purchase orders *were* the transactions.

The bankruptcy court correctly rejected G&G's position, concluding that the term "transaction" means the shipment of goods, not contract formation. 424 B.R. at 429-30. As the bankruptcy court recognized, the only case to have expressly considered the issue held that the term "before entering into the transaction" in subsection (c)(3)(ii)—analogous to the term "before the affected transactions occur" in 7 C.F.R. § 46.46(f)(3)(ii)—means before the produce is shipped. *See In re Richmond Produce*, 112 B.R. at 374 ("Here, the letters at issue were

-8-

furnished well prior to delivery of the produce, and thus preceded the sale transaction as required by 7 U.S.C. Section 499e(c)(3)(ii)."). More significantly, the Department of Agriculture's comprehensive treatment of § 499e(c) in *Caito Produce* plainly reflects an understanding that "before entering into the transaction" means before shipment, and thus encompasses purchase orders executed prior to delivery. *See* 48 Agric. Dec. at 609 ("Another reason for requiring that agreements for deferred payment be consummated before entering into the transaction is because of the unequal bargaining power of the parties, once the buyer has the produce."); *ibid*. ("There is a sound basis for the regulatory requirement that agreements to extend the time for payment must be made at the time the purchase contract is made. After the buyer has the produce, the parties are no longer dealing on equal terms. The seller can no longer refuse to sell; the buyer is the only one with options, *i.e.*, he can pay or not pay, as agreed."); *see also In re Gilardi Truck & Transp., Inc.*, 43 Agric. Dec. 118, 122-23 (1984) ("However, the agreement [to provide for payment terms different from the default term in the regulations] must be reached at the time the contract is made, or it is meaningless for regulatory purposes."). G&G offers no basis to depart from the Department of Agriculture's understanding of PACA. *See Coosemans Specialties, Inc. v. Dep't of Agric.*, 482 F.3d 560, 564 (D.C. Cir. 2007) ("The USDA is entrusted to administer PACA, and therefore its interpretations are entitled to deference under *Chevron*."); *Tom Lange Co., Inc. v. A. Gagliano Co., Inc.*, 61 F.3d 1305, 1310 n.8 (7th Cir. 1995). Accordingly, because the parties' express agreement in the purchase orders to a thirty-day payment term occurred before the delivery of the peppers, G&G's failure to reflect that payment term in its invoices abrogated its PACA trust rights.

Finally, G&G argues that regulatory amendments recently promulgated by the Department of Agriculture support its view that Ebro's purchase orders were not express

agreements entered into prior to the transactions. But the amendments simply provide that a seller does not abrogate its PACA trust when entering into a *post*-default agreement extending the buyer's payment period. *See* Perishable Agricultural Commodities Act: Impact of Post-Default Agreements on Trust Protection Eligibility, 76 Fed. Reg. 20217, 2011 WL 1358976 (Apr. 12, 2011) (amending 7 C.F.R. § 46.46(e)(2)). Because this case does not implicate a post-default agreement regarding payment terms, and because the regulatory amendments do not impact any of the legal issues addressed above, the amendments have no bearing here.

**II.     G&G Is Entitled To An Attorney Fee Award Reflecting Its Degree Of Success.**

The bankruptcy court held that G&G was not entitled to an attorney fee award under Illinois law. On appeal, both parties agree that § 499g(b), the PACA provision allowing sellers to enforce USDA reparations orders in federal court, governs the attorney fee issue in this case. The provisions states, in pertinent part:

> If any commission merchant, dealer, or broker does not pay the reparation award within the time specified in the Secretary's order, the complainant … may within three years of the date of the order file in the district court … a petition setting forth briefly the causes for which he claims damages and the order of the Secretary in the premises. … *If the petitioner finally prevails, he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit*.

7 U.S.C. § 499g(b) (emphasis added). Each party claims that it is the prevailing party under this provision. Ebro plainly is mistaken. The statute expressly provides that a prevailing "petitioner" should be awarded fees. G&G, not Ebro, is the petitioner here—G&G filed suit in district court, and then brought an adversary proceeding in bankruptcy court, because Ebro did not comply with the USDA's reparations order—so Ebro has no right to fees under § 499g(b).

As the petitioner, G&G is entitled to "a reasonable attorney's fee" if it has "finally prevail[ed]" in its "suit" to enforce the reparations order. Guidance as to whether G&G

-10-

"prevailed" and, if so, the size of its attorney fee award is provided by *Robinson Farms Co. v. D'Acquisto*, 962 F.2d 680 (7th Cir. 1992). In that case, Robinson Farms shipped cantaloupes to Tropic Banana Company; Tropic paid by check but stopped payment before the check was cashed; Robinson filed a reparations action before the USDA pursuant to 7 U.S.C. § 499f & 499g(a); and the USDA issued a reparations order requiring Tropic to pay $3,030 to Robinson. *Id*. at 681-82. Tropic challenged the order under 7 U.S.C. § 499g(c). Unlike § 499g(b), which permits a seller to enforce as USDA reparations order in federal district court if the buyer refuses to comply, § 499g(c) permits "[e]ither party adverse affected" by a reparations order to "appeal therefrom" to the district court. 7 U.S.C. § 499g(c). Both provisions provide that an attorney fee award "shall be allowed," § 499g(b) to "the petitioner" if it "finally prevails," and § 499g(c) to the "appellee" if it "prevails." 7 U.S.C. § 499g(b), (c).

The district court in *Robinson Farms* reduced Robinson's reparations award from $3,030 to $721 and declined to award any fees to Robinson. Robinson Farms appealed the denial of fees, and the Seventh Circuit reversed. The Seventh Circuit held that although the district court substantially reduced the reparations award, Robinson still was the prevailing party because it "received some of the relief sought and had judgment entered in its favor." 962 F.2d at 684. The court further held that because Robinson was the prevailing party, § 499g(c) *required* an attorney fee award. *Id*. at 684-85 (explaining that § 499g(c) states that attorney fees "*shall* be allowed" to prevailing appellee ). That said, the court emphasized that only a "reasonable" fee should be awarded, noting that Robinson's "degree of success [and] rejection of Tropic's $1,000 offer of judgment" should be considered in determining the amount of the award. *Id*. at 684 n.4.

Although it interpreted § 499g(c), *Robinson Farms* governs here because, as the decision itself noted, § 499g(c) and § 499g(b) have materially identical attorney fee provisions. *Id*. at 685

(the provisions, which use "similar" language, both "evince a general purpose to award fees to prevailing plaintiffs, encouraging vigorous private enforcement of the law, thereby creating a fair marketplace"). The principles set forth in *Robinson Farms* lead to the following conclusions. First, although the bankruptcy court correctly held that G&G failed to preserve its PACA trust rights, G&G prevailed within the meaning of § 499g(b) because it "received some of the relief sought and had judgment entered in its favor," *id*. at 684—an order enforcing the USDA reparations award by entering judgment for G&G in the amount of $43,946.60, the sales price of the peppers plus interest and costs. Second, the fact that G&G did not prevail on its PACA trust claim nonetheless should be considered in determining a "reasonable" attorney fee award under § 499g(b). That determination is left to the bankruptcy court, which has the greatest familiarity with G&G's efforts to enforce the reparations order.

## Conclusion

The bankruptcy court's decision that G&G failed to preserve its PACA trust is affirmed, while its decision denying G&G's request for attorney fees is reversed and remanded for determination of a reasonable attorney fee award.

June 2, 2011

United States District Judge